Filed 8/9/13 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C066524 |
| Plaintiff and Respondent, | (Super. Ct. No. SF111178A) |
| v. | ORDER MODIFYING OPINION |
| RAMMEL BARAO, | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on August 5, 2013, be modified as follows:

In the sixth line of the first paragraph on page 2, delete "an ex-felon" and replace with "a previously convicted felon."

This modification does not change the judgment.

1

THE COURT:


      RAYE      , P. J.


      NICHOLSON    , J.


      MAURO      , J.

Filed 8/5/13 (unmodified version)

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C066524 |
| Plaintiff and Respondent, | (Super. Ct. No. SF111178A) |
| v. | |
| RAMMEL BARAO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, George J. Abdallah, Jr., Judge.  Affirmed.

Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

1

Defendant Rammel Barao shot and killed Juan Carlos Lorenzo. An information jointly charged defendant and a codefendant with murdering Lorenzo in the course of robbing him (Pen. Code, §§ 187; 190.2, subd. (a)(17)(A); count 1)[1] and with the robbery of Lorenzo and Lorenzo's companion, Domingo Moyotl (§ 211; counts 2 and 3). Each of these three counts alleged defendant personally used a firearm. (§ 12022.53, subd. (d).) Defendant was also charged with possession of a firearm by an ex-felon (§ 12021, subd. (a)(1); count 4) and unlawful possession of ammunition (§ 12316, subd. (b)(1); count 5). The information further alleged defendant had previously been convicted of two serious felonies for purposes of the "Three Strikes" law (§§ 667, subd. (a); 1170.12, subd. (b)), and that he had served a prior prison term (§ 667.5, subd. (b)).

Defendant pleaded not guilty. However, prior to trial, the prosecutor and the defendant sought the court's approval of a plea bargain. Under the proposal, the prosecutor would amend the information by charging defendant with voluntary manslaughter instead of murder, defendant would plead guilty to that charge, and he would admit the gun use, one of the prior strikes, and the prior prison term. In exchange, he would receive a prison term of 41 years. The trial court refused to approve the bargain and denied the request to amend the information.

During trial, defendant sought a jury instruction on involuntary manslaughter. The trial court denied defendant's request.

A jury convicted defendant on count 1 of second degree murder, and it found the firearm enhancements to be true. The jury also convicted defendant on counts 4 and 5, possession of a firearm and possession of ammunition. It acquitted him of the two robbery counts, counts 2 and 3. The trial court subsequently found the prior strike and

---

[1]    Subsequent undesignated references to sections are to the Penal Code.

2

prison term allegations to be true, and it sentenced defendant to a state prison term of 75 years to life.[2]

On appeal, defendant contends the trial court abused its discretion by refusing to approve the plea bargain and the proposed amendment to the information. Defendant also contends the trial court erred when it denied his request for a jury instruction on involuntary manslaughter. We disagree with his contentions and affirm the judgment.

FACTS

We take most of our discussion of the facts from our published opinion in the codefendant's appeal, *People v. Johnson, supra,* 208 Cal.App.4th at pages 1095-1096. During the evening of February 28, 2009, defendant and codefendant Vandell Johnson, Jr., accompanied by their girlfriends, walked from defendant's apartment to a pool hall to play pool. Also present at the pool hall were Lorenzo and Moyotl. Although Moyotl understood only a little English, the two groups struck up a conversation. Eventually the four men went into the parking lot and began discussing drugs. Moyotl heard someone say "cocaine," but he did not understand much more of the conversation.

After speaking for a short time, the four men got into Lorenzo's car -- Moyotl in the driver's seat, Lorenzo in the passenger seat, and defendant and codefendant Johnson in the backseat. Defendant and Johnson tried to give Moyotl directions, but Moyotl had difficulty understanding, so Lorenzo took over the driving. Defendant or Johnson directed Lorenzo to a parking lot.

According to Moyotl, Johnson got out of the car and walked toward the street, but then he returned and stood by the driver's door. Moyotl saw defendant get out of the car,

---

[2]     The codefendant was acquitted of murder and all lesser included offenses, as well as the firearm enhancements, but he was found guilty of the two robberies. The court also found true three prior strike convictions and that he had committed the current offenses while being on bail for another offense. The court sentenced the codefendant to 50 years to life in prison. (*People v. Johnson* (2012) 208 Cal.App.4th 1092, 1094-1095.)

take a gun from his waistband and put it up his sleeve. As defendant and Johnson were speaking with Lorenzo on the driver's side, Moyotl said to Lorenzo, "Let's go, let's go now." However, Lorenzo continued talking and then defendant shot Lorenzo in the head. Lorenzo's car rolled about 25 feet, hit a fence, and stopped.

Defendant immediately walked away from the area, but Johnson went to the passenger side of the car and demanded money from Moyotl. Moyotl gave Johnson his wallet, and Johnson gestured for Moyotl to get out of the car and leave. Moyotl walked away but looked back and saw Johnson get into the front passenger seat of Lorenzo's car. As Moyotl walked, he called the police, who met him at a laundromat about two blocks away.

Police officers who responded to the laundromat spoke with Moyotl, with whom they had difficulty communicating. Eventually, the officers learned of the shooting and found Lorenzo's car in the parking lot with Lorenzo still in it. Lorenzo's car stereo, which had been in the dashboard prior to the shooting, was missing and the connecting wires were hanging from the center console. Lorenzo was still alive and was transported to a hospital, but he died a few days later. The cause of death was a single gunshot wound to the head.

*Defense*

Defendant did not testify or present any evidence. Johnson, however, testified on his own behalf. He confirmed meeting Lorenzo and Moyotl at the pool hall. Johnson claimed it was Lorenzo who was selling drugs and that he, who also sold drugs, intended to buy drugs from Lorenzo. Lorenzo set up the buy and drove them to the parking lot where the drugs were to be delivered.

Fearing that he and defendant were being set up, Johnson got out of Lorenzo's car and walked away. However, he heard Lorenzo speaking loudly to defendant, so he walked back to the car. While Johnson and defendant were talking with Lorenzo, defendant suddenly pulled out a gun, which Johnson did not know defendant possessed.

4

Lorenzo reached out of the driver's window for the gun, Johnson heard the car's engine rev, and defendant then shot Lorenzo. Johnson fled because he was scared.

Johnson denied robbing or intending to rob either Lorenzo or Moyotl. When he later asked defendant what happened, defendant said that "the guy tried to run him over and then a shot went off."

DISCUSSION

I

*Denial of Plea Bargain and Motion to Amend the Information*

Defendant contends the trial court abused its discretion and violated the constitutional doctrine of separation of powers when it refused to accept the plea bargain and denied the prosecution's motion to amend the information. He claims the prosecutor had determined the evidence was insufficient to prosecute a charge of murder, and the court should have honored that decision. He asserts the plea bargain was not barred by section 1192.7's prohibition of plea bargaining in serious felony cases. He also argues the proposed amendment to the information did not violate any of defendant's substantive rights, and the court denied the amendment based on an improper factor, the disparity in sentencing. We conclude the court did not abuse its discretion in denying the plea bargain and the motion to amend.

A.    *Additional background information*

Prior to trial, the prosecutor sought leave to amend the information by charging voluntary manslaughter instead of murder in count 1. The prosecutor explained she sought leave to amend in order to facilitate a proposed plea bargain, which she also sought to be approved at the same time. Under the plea bargain, defendant would plead guilty to voluntary manslaughter and two counts of robbery, would admit one of his prior strikes, would admit to use of a gun, and would admit his prior prison term. He would receive a prison term of 41 years.

5

The prosecutor and defense counsel believed the proposed plea more correctly conformed to the evidence. The trial court disagreed with that assertion, having been the judge that conducted defendant's preliminary hearing. The prosecutor explained that based on the evidence, it was possible the jury would convict of voluntary manslaughter instead of murder. She believed there was a potential the jury could conclude defendant did not intend to rob Lorenzo and Moyotl, and that the gun discharged accidentally when Lorenzo reached out of the car towards defendant.

The court took the motions to amend and approve the plea bargain under submission. It was "not prepared to grant the motions at this point based on the facts and circumstances as the Court heard them at the preliminary hearing."

Subsequently, defendant filed a motion to join the prosecution's motion to amend. He asserted that under section 1009, the statute that allows amendment of a criminal pleading, amending the information by charging voluntary manslaughter instead of murder was appropriate because sufficient evidence introduced at the preliminary hearing supported the voluntary manslaughter charge.

Ultimately, the court refused to approve the plea bargain and it denied the motion to amend. The court disapproved the plea bargain based on the evidence presented to it at the preliminary hearing. It also concluded section 1192.7 prohibited plea bargaining in this case, and that none of the exceptions to that rule applied.

The court also denied the motion to amend the information. Section 1009 vested the court with discretion to grant or deny a proposed amendment to an information, and the court exercised that discretion and denied the amendment, again based on the evidence presented at the preliminary hearing.

The prosecutor and the defendant sought the court's approval of the plea bargain and information amendment on three additional occasions; once in pretrial, once during in limine motions, and once during trial. Each time, the trial court denied the motion.[3]

B.      *Analysis*

This case was prohibited by section 1192.7 from being resolved by plea bargain. That statute, adopted as part of Proposition 8, prohibits plea bargaining in any case in which the information charges a serious felony unless certain exceptions are met. (§ 1192.7, subd. (a)(2); *People v. Arauz* (1992) 5 Cal.App.4th 663, 665.) Three of the charges alleged against defendant qualified under the statute as serious felonies: murder, personal use of a firearm, and robbery. (§ 1192.7, subds. (c)(1), (8), (19).)

As a result, the case could not be resolved by plea bargain unless one of three exceptions was satisfied: there was "insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence." (§ 1192.7, subd. (a)(2).) The trial court's decision not to approve the plea bargain in effect was a determination that none of these exceptions to the prohibition applied here. The evidence supports the court's determination.

The trial court held there was sufficient evidence to convict defendant of murder. It was intimately familiar with that evidence, as it had heard defendant's preliminary hearing. Indeed, in some cases, a court may need to consult a probation report and the preliminary examination transcript when deciding whether to approve a proposed plea bargain. (*People v. Stringham* (1988) 206 Cal.App.3d 184, 194.) The prosecution's evidence showed that defendant exited the car, stood outside the car by the driver's side window, and then shot Lorenzo in the head without apparent provocation. This was

---

[3]      Defendant challenged the court's ruling by a petition for writ of mandate to this Court. We denied the petition. (*Barao v. Superior Court* (Mar. 11, 2010, C064276).)

sufficient evidence to prove the prosecution's case. Based upon its understanding of the evidence, the trial court was free to disagree with the prosecutor's doubts about being able to prove murder, and it did not abuse its discretion in doing so.

The trial court also recognized the plea bargain would result in a substantial change in defendant's likely sentence. In determining whether a plea bargain would result in a substantial change in the sentence, we are to compare the proposed sentence with the sentence the judge would impose without a plea bargain. (*People v. Arauz, supra,* 5 Cal.App.4th at p. 669.) The actual sentence the court imposed on defendant for second degree murder and his other crimes and enhancements was 75 years to life, a term of imprisonment almost twice as long as the sentence proposed under the plea bargain. The court likely recognized this substantial disparity in the sentence defendant would receive after trial and the one proposed under the plea bargain, and it concluded the plea bargain would result in too drastic a reduction in sentencing.

The prosecution also made no showing that the testimony of a material witness could not be obtained.

Thus, the trial court correctly concluded this case fell within section 1192.7's prohibition of plea bargaining, and it rightly refused to approve the proposed plea. The court did not abuse its discretion in doing so.

Defendant claims the court abused its discretion in denying the prosecution leave to amend the information to charge involuntary manslaughter in place of murder. He argues the court relied on an improper factor -- sentencing -- to deny the prosecution's motion. We disagree. The motion to amend was brought to facilitate the plea bargain, not as a separate and unrelated motion. As a result, the trial court had to review the motion as part of its analysis under section 1192.7's prohibition of plea bargaining. That statute, in turn, required the court to consider sentencing as a factor. Having concluded the plea bargain would result in a significantly more lenient sentence, and thus the case could not be resolved by plea bargain, the court was well within its discretion to deny the

8

motion to amend as well on that same basis. Since the plea bargain was prohibited, the motion to amend effectively became moot.

Section 1192.7, subdivision (a)(2), serves an important public purpose which the courts are obligated to enforce. "Section 1192.7 was added by an initiative measure (Prop. 8) approved by the people on June 8, 1982. (Stats. 1982, § 7, p. A-189.) The electorate's obvious purpose in enacting the measure was to place limitations on plea bargaining in serious felony cases. Unless trial courts require the parties to justify agreements they make in such cases, the statute's purpose may be ill-served. Prosecutors may be free to bargain away serious felony charges even when there is sufficient evidence to prove the case, testimony of material witnesses is available, and reduction or dismissal would result in a substantial change in sentence. In such cases defendants are not likely to complain, and the public may not learn of, or have any opportunity to protest, a bargain which is statutorily prohibited. Additionally, failure to make a proper record may give the prosecution an opportunity to 'pull the string' on a plea agreement any time prior to sentencing simply by asserting the violation of section 1192.7.

"There is a simple way to avoid such sticky situations. If trial courts, prosecutors, and defense counsel will recognize and respect the provisions of section 1192.7 and make a record showing that one of the statutory exceptions to the prohibition on plea bargaining applies, the electorate's purpose in enacting the statute will have been satisfied and the bargains will not be capable of being easily undone." (*People v. Tung* (1994) 30 Cal.App.4th 1607, 1612, fns. omitted [trial court did not abuse its discretion by vacating plea agreement in serious felony case that violated section 1192.7].)

II

*Refusal to Instruct Jury on Involuntary Manslaughter*

The trial court denied defendant's request to instruct on involuntary manslaughter, concluding no evidence justified the instruction. Defendant contends sufficient evidence justified giving the instruction. He asserts there was sufficient evidence to establish he

9

had either brandished or negligently discharged a weapon, and that he had killed Lorenzo unintentionally and in unreasonable self-defense, all elements of involuntary manslaughter. He argues the court erred in not instructing on the lesser included offense sua sponte or in response to his request.

Assuming only for purposes of argument that sufficient evidence justified instructing on involuntary manslaughter, we conclude the court's decision not to instruct on the defense was not prejudicial. " 'Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions.' [Citation.]" (*People v. Chatman* (2006) 38 Cal.4th 344, 392.)

The court instructed the jury that murder required a finding of malice aforethought. When the jury convicted defendant of second degree murder but acquitted him of robbery, it found he had acted with malice. By so concluding, the jury rejected defendant's claim that the killing was done without malice, an element of manslaughter. (§ 192.) Thus, the jury determined the killing was not the result of a brandishing or a negligent discharge of a firearm, nor was it the result of an unintentional act of self-defense. It was the result of malice. That determination precluded the jury from finding defendant guilty of involuntary manslaughter, and an instruction on that defense beyond a reasonable doubt would not have resulted in a more favorable verdict for defendant. There was no prejudicial error.

## DISPOSITION

The judgment is affirmed.

      NICHOLSON    , J.

We concur:

    RAYE     , P. J.

    MAURO

10