Filed 5/5/25  P. v. Gutierrez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ARTURO PEDRO GUTIERREZ,<br><br>     Defendant and Appellant. | A168432<br><br>(Lake County<br>Super. Ct. No. CR964508) |

Defendant and appellant Arturo Pedro Gutierrez (appellant) appeals from the judgment following his conviction for various offenses arising out of an incident during which, as the jury found, appellant severely beat the victim, M.M.  Appellant contends the trial court erred in rejecting a plea agreement and in denying two *Marsden*[1] motions.  We affirm.

PROCEDURAL BACKGROUND

In September 2022, the Lake County District Attorney filed an information charging appellant with infliction of corporal injury on a dating partner (Pen. Code, § 273.5, subd. (a));[2] assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)); battery causing serious bodily injury (§ 243, subd. (d)); criminal threats (§ 422, subd. (a)); and false

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] All undesignated statutory references are to the Penal Code.

1

imprisonment (§ 236).[3] As to several of the counts, the information included allegations that appellant personally inflicted great bodily injury (§ 12022.7, subds. (a), (e)). The information also alleged that appellant had two prior strike convictions and prior serious felony convictions (§§ 667, 1170.12).

In April 2023, a jury found appellant guilty as charged and found true the great bodily injury allegations. The trial court found true the prior conviction allegations. In June, the court denied appellant's motion to strike the prior strike offenses and sentenced appellant to an aggregate term of 40 years to life. The sentence was comprised of 25 years to life on the infliction of corporal injury charge, plus five years for the great bodily injury enhancement, plus 10 years for the prior serious felony convictions, with the other sentences stayed under section 654. The present appeal followed.

FACTUAL BACKGROUND

M.M. dated appellant for about a year until the relationship ended on August 18, 2022. On that day, appellant asked M.M. to come stay with him, and she agreed. Appellant brought M.M. from Willits to his residence, an RV in Lake County.

Appellant and M.M. drank rum together, and, after about 10 or 15 minutes, appellant became violent without explanation. He grabbed M.M. by her hair and pulled her to the bedroom, where he proceeded to beat her for a couple of hours.[4] Eventually, M.M. was able to escape. She hid outside overnight and in the morning was able to get assistance from a neighbor.

An ambulance took M.M. to a hospital. The treating emergency room physician testified M.M. had "bruises from head to toe." She had "bruises all

---

[3] The information also charged appellant with torture (§ 206), but the trial court dismissed that charge before trial on the prosecution's motion.

[4] M.M. testified about the beatings in detail, but it is not necessary to summarize the details to resolve the issues on appeal.

over her face," particularly around her eyes, and broken blood vessels in her eyes. The bottom of M.M.'s eye socket was fractured, which caused bone to go into her sinus. She had bruising on her arm that indicated she had suffered "a lot of trauma." M.M. "was just somebody that had really sustained a lot of trauma."

At the time of trial, M.M. continued to have vision problems and pain in her arm due to the beatings. She still had bald spots on her head from where appellant had pulled out her hair. At the time of the incident, M.M. used methamphetamine, but she did not use it that night. She did not recall telling a sheriff's deputy that she had used methamphetamine that night.

A friend of appellant, Julie J., testified on his behalf that appellant asked her to take pictures of him on or around August 20, 2022. He had "[s]cratches and bites and bumps," as well as bruises, on various parts of his body. His right eye was black and blue.

## DISCUSSION

I.  *No Showing of Error in Rejection of the Plea Agreement*

During a break on the first day of testimony, the parties informed the court that they had reached a negotiated disposition. Appellant would plead guilty to inflicting corporal injury on M.M. and admit one of the prior strike convictions in exchange for an 18-year sentence. The trial court rejected the agreement based on statutory limits on plea bargaining. The court explained, "Pursuant to . . . section 667, prior strikes shall not be used in plea bargaining unless such a dismissal is either, one, in the furtherance of justice; or two, there's insufficient evidence to prove the prior. And pursuant to . . . section 1192.7, after an [i]nformation is filed, serious felonies may not be dismissed . . . unless there is insufficient evidence to prove the People's case, testimony of a material witness cannot be obtained[,] or reduction or

3

dismissal would not result in a substantial change in the sentence.  [¶]  I don't . . . find that it would be in the furtherance of justice to dismiss any strikes.  And further, I don't find that any plea bargaining would be appropriate in this case given there are a number of serious felonies charged. All the material witnesses have testified.  It does appear that there is sufficient evidence to prove the People's case. . . .  And it does appear that the proposed disposition would result in a substantial change in the sentence.  So for those reasons, I am not going to accept that plea bargain."

Section 1192.7 "prohibits plea bargaining in any case in which the information charges a serious felony unless certain exceptions are met." (*People v. Barao* (2013) 218 Cal.App.4th 769, 775.)  The exceptions are there was "insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence."  (§ 1192.7, subd. (a)(2); see also *Barao*, at p. 775.)  In the present case, appellant does not dispute that the proposed plea agreement contemplated dismissal of serious felonies, and he does not argue any of the statutory exceptions applied.  Accordingly, appellant has failed to show it was improper for the trial court to reject the plea agreement on the basis of section 1192.7 alone.

The other statute relied upon by the trial court, section 667, limits plea bargaining in cases involving the "Three Strikes" law.  (See § 667, subd. (g); see also *People v. Clancey* (2013) 56 Cal.4th 562, 582.)  In particular, the law "provides that '[p]rior serious and/or violent felony convictions shall not be used in plea bargaining as defined in subdivision (b) of [s]ection 1192.7.  The prosecution shall plead and prove all known prior . . . serious and/or violent [felony] convictions and shall not enter into any agreement to strike or seek the dismissal of any prior serious and/or violent felony conviction allegation

4

. . . ,' except to the extent 'there is insufficient evidence to prove the prior serious and/or violent felony conviction' or dismissal of the prior conviction would be 'in the furtherance of justice pursuant to [s]ection 1385.' " (*Clancey*, at p. 582.)

The information alleged appellant had two prior strike convictions for attempted murder in 1994 and kidnapping in 2012, and the trial court ultimately found the allegations true. Appellant does not dispute that the convictions were strikes or that there was sufficient evidence to prove them. Instead, albeit without referencing section 667, appellant contends that the trial court abused its discretion in finding dismissal of one of the strikes would not be "in the furtherance of justice pursuant to [s]ection 1385." (§ 667, subd. (f)(2).) Appellant argues appellant was 62 years old at the time of trial; his first strike offense was remote; the current offenses were during a continuous course of conduct; appellant was under the influence of alcohol; appellant had mental health issues; and the "negotiated disposition adequately addressed appellant's criminal actions as well as the need to protect society."

In deciding whether striking a strike is in the furtherance of justice, " 'the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not

5

'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Id.* at p. 378.)

We observe that the trial court at sentencing denied appellant's motion to strike his prior strikes, and appellant does not claim on appeal that the denial was an abuse of discretion. At sentencing, the court reasoned that "the nature and seriousness of the prior strikes were extremely serious," appellant violated parole shortly after being released from prison following his second strike, he committed the current "extremely serious" offenses three years later, the current and prior offenses "involve[d] significant acts or attempted acts of violence," and appellant took no responsibility for his conduct. The court concluded by stating, "The Court cannot say [appellant] is deemed outside the spirit of the three-strikes law. In fact, [appellant] is exactly the type of person the law was written for. To answer defense counsel's question, justice is best served by sending [appellant] to prison for the remainder of his life." For the same reasons articulated by the trial court in denying the motion to strike at sentencing (with the exception of acceptance of responsibility), the trial court did not abuse its discretion in finding that dismissal of a strike would not be in the furtherance of justice for the purposes of section 667. Appellant has not shown the court was unaware of its discretion or relied on impermissible factors, and the court's determination was not " ' "arbitrary, capricious or patently absurd." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

II.     *No Showing of Error in Denial of Appellant's* Marsden *Motions*

During trial and again before sentencing, appellant made *Marsden* motions seeking to replace his counsel, Thomas Feimer.  Appellant contends the trial court abused its discretion in denying the motions because he and his counsel were embroiled in an irreconcilable conflict.  Because the conflict was a disagreement about trial tactics, appellant has not shown error.

A.      *Background*

Appellant made his first *Marsden* motion after the prosecution rested its case.  Appellant asserted that his counsel had failed to interview and subpoena witnesses, had not visited him in jail, had not asked questions of the prosecution's witnesses that appellant wanted him to ask, had not raised that M.M. had committed murder, and had told appellant that M.M. was not going to testify.  Appellant mentioned five people that he believed had information relevant to M.M.'s history of drug use and other information about M.M.

In response, Feimer explained he had interviewed the people appellant identified, other than one person who he was hearing about for the first time.  Feimer determined that none of the people had relevant information, or that any information was duplicative of the testimony he intended to present through appellant's friend, Julie J.  Feimer had investigated the allegation that M.M. had been involved in a murder and had been unable to find anyone with personal knowledge of it.  Regarding whether M.M. would testify, Feimer explained that he had told appellant that the prosecutor had indicated M.M. was reluctant to testify, but the prosecutor subsequently informed Feimer that M.M. was "in the building and ready to testify."

The trial court found that Feimer had interviewed the potential witnesses and determined they did not have relevant information, except for

7

one whose testimony would have been duplicative. The court found Feimer had properly represented appellant and would continue to do so.

Appellant made a second *Marsden* motion at the start of the sentencing hearing. Appellant reiterated his complaints that Feimer had not interviewed or subpoenaed various witnesses, addressed M.M.'s history of drug use, or adequately presented evidence of his injuries. Appellant asserted that M.M. had overdosed the night in question, and she "started freaking out" after he revived her. Appellant also alluded to potential juror misconduct in that Julie J. overheard a juror talking about appellant's case to another person.

In response, Feimer explained what he had done to investigate appellant's claims regarding M.M.'s drug use, appellant's injuries, and potential witnesses. Appellant had not told him about the potential juror misconduct issue. Feimer opined that appellant's claim that M.M. sustained her injuries when he roused her from an overdose was an "implausible defense" that would have required appellant's testimony.

The court found Feimer's statements credible and any conflicting statements by appellant not credible. The court found that Feimer had properly represented appellant and would continue to do so.

B.    *Analysis*

"When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " (*People v. Taylor* (2010) 48

8

Cal.4th 574, 599.) "We review the denial of a *Marsden* motion for abuse of discretion. [Citation.] Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*Ibid.*)

Appellant does not argue the trial court erred in finding that Feimer was providing adequate representation. Instead, he argues "the evidence showed that appellant and Feimer were embroiled in an irreconcilable conflict such that ineffective representation was likely to result." But the purported evidence of such a conflict was appellant's mistrust of Feimer because Feimer disagreed with appellant on trial tactics. In particular, Feimer refused to ask questions appellant wanted him to, did not present evidence of appellant's injuries in the way appellant wanted him to, and failed to impeach M.M. in certain ways.

Appellant's arguments are misplaced. "A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' 'When a defendant chooses to be represented by professional counsel, that counsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant.' " (*People v. Welch* (1999) 20 Cal.4th 701, 728–729, overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 91; accord, *People v. Rodriguez* (2014) 58 Cal.4th 587, 624.) Accordingly, the tactical disagreements identified by appellant did not establish an irreconcilable conflict.[5] Nor was such a conflict

---

[5] Appellant also claimed Feimer "failed to adequately visit and discuss his case with him prior to trial." But Feimer's decisions regarding such visits were an aspect of his trial preparation strategy. (See also *People v. Myles* (2012) 53 Cal.4th 1181, 1208 (*Myles*) ["As for defendant's complaint that

shown by appellant's assertions that he did not trust Feimer. " 'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.' " (*Myles*, *supra*, 53 Cal.4th at p. 1207.)[6]

Appellant has not shown the trial court abused its discretion in denying his *Marsden* motions.

## DISPOSITION

The trial court's judgment is affirmed.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A168432)

---

counsel rarely visited him, such an allegation does not justify substitution of counsel"].)

[6] The federal cases appellant asserts are analogous are distinguishable. In *United States v. Walker* (9th Cir. 1990) 915 F.2d 480, 483, overruled on another ground by *United States v. Nordby* (9th Cir. 2000) 225 F.3d 1053, 1059, "the district court made virtually no attempt to discover the causes underlying [defendant's] dissatisfaction with his attorney." And the court in *United States v. Williams* (9th Cir. 1979) 594 F.2d 1258, 1261, emphasized that there was a "strong showing" of an irreconcilable conflict and the request for substitution was made "well before the date of trial." (See also *id.* at pp. 1260–1261 ["where the request for change of counsel comes during the trial, or on the eve of trial, the Court may, in the exercise of its sound discretion, refuse to delay the trial to obtain new counsel and therefore may reject the request"].)